Johnson, J.
The judgment rendered against the plaintiffs in error, and in favor of Isaac Carter, may be regarded as two judgments: 1st. A judgment at law for money; and, 2nd. A judgment in equity for the sale of real estate for the amount found due in the judgment at law, to satisfy the debt.
It was not the object of the petition to revive the money judgment, for it is not suggested that it was dormant. It would become dormant in one of two ways only; either by the death of Isaac Carter, the judgment creditor, or by failure to sue out, execution for five years. Unless it had become dormant there, was no legal impediment to its collection by execution, the assignee using the name of the assignor for that purpose.
. Neither was the judgment in equity, or decree for the sale of land dormant, if, as we may assume, Isaac Carter is still living..
*117 Decrees of this nature do not become dormant by a failure to issue execution for five years, as do money judgments.
' While the parties to the decree live, the case, for the purposes of the decree, is a lis pendens, though under the code practice the clerk is directed to leave it off the trial docket. Moore v. Ogden, 35 Ohio St. 430 ; Beaumont v. Ogden, 24 Ohio St. 456 ; Fox v. Reeder, 29 Ohio St. 181; Hunter v. Hopeton, 4 McQueen, 972.
By the death of Guthrie his right to enforce the judgment in equity, as well as his legal right to collect the judgment at law, vested in plaintiff as his personal representative. He might, as such representative,' have maintained an action for a money judgment on the original judgment at law, and had a new judgment in his own name for the amount found due at the time such new judgment should be rendered, and have enforced the same by execution. Healy v. Robey, 6 Ohio, 521; Tyler v. Winslow, 15 Ohio St. 364; Moore v. Ogden, 35 Ohio St. 433, 434. .This he has not sought to do. In substance the prayer is to authorize him, as the representative of the assignee, to carry into effect the original decree, and not to make a new decree or judgment.
Bills to enforce or carry into effect decrees in equity were well known in chancery practice. Mitford Eq. PI. ch. 1, § III., ¶ 6 ; 2 Daniels Ch. p. 1585, § YII.; Story Eq. PI. 429-432. .
Lord Redesdale, in the paragraph from Mitford, says: “ A bill of this nature was generally, partly an original bill, and partly a bill in the nature of an original bill, though not strictly original; and sometimes it is likewise a bill of revivor, or a supplemental bill, or both. The frame of the bill is varied ac-. cordingly.”
The necessity for such a bill arises from different causes, as where either of the parties under a decree has sold his interest therein, or in the subject-matter affected thereby. It may be brought by or against a person claiming as assignee of a party. The form of the final judgment is that the original decree be enforced with such modifications as events subsequent to its rendition render necessary to protect the rights of all parties. *118 Mitford Eq. PI. cb. 1, § III., ¶ 6; Daniels Ch. Pr.; Story Eq. PI. supra ; Organ v. Gardner, 1 Cases in Ch. 231; Binks v. Rinks, 2 Bligh, 593 ; Cartarel v. Pasckal, 3 Peere Wms. 196 ; McGrew v. Andrews, 12 Met. 363.
While, under our civil code of practice, names and'forms of proceedings have been changed, yet the substantial rights of parties, in equity as well as at law, remain the same, except where changed by statute. We may therefore treat this petition as in the nature of a bill in equity to enforce the former decree for the sale of real estate, in favor of the personal representative of Guthrie, who became the owner by assignment.
Again, the answer, reply and order of reference, made by agreement of the parties, present issues of unquestioned equitable cognizance. They involve the question of a settlement between the parties, by an account stated, made by Guthrie with Rankin, who became the owner of the Carter claim, the correction of a mistake therein, the settlement of claims arising after said account stated, the proper application of numerous payments made by Rankin on these various claims and demands, the elimination of usurious interest, the ascertainment of what lands had been sold, since the original decree, what had been done with the purchase-money, and what lands remained subject to the decree. The report of the master is an elaborate response to these issues. ■ It involved an examination and adjustment of a number of claims and demands, other than the Carter judgment, and an equitable application of sundry payments. The issues thus presented, heard and determined, were founded on the answer, or, more properly, the cross-petition of defendant. To defeat the plaintiff’s right to enforce the decree, the defendant must show such a state of facts as would entitle him to have the same satisfied and canceled in whole or in part.
By express agreement of parties all these issues were referred to a master clothed with the largest powers. He was ordered, “ to hear evidence and make findings on all points and facts that said parties or either of them may request, in any way *119 connected with a full and just understanding and adjustment, of the matters in dispute between the parties.”
An adjustment of the. matters in dispute other than the amount due on the Carter judgment became necessary, as the master found that these several payments were made under an express agreement that they should be applied first to the satisfaction of these other claims.
The master’s report shows that he was called on to exercise these enlarged powers, and to review and adjust large and complicated transactions between these parties, running through a series of years. This was a necessity arising out of the agreement above stated, as in no other way could the court determine whether said judgment had been satisfied in whole or in part. If we concede, however, that the petition tendered an issue at law, triable by a jury, the issue made up by agreement of parties, and founded upon the answer, was purely equitable in its nature and triable by the court. If the defense set up was found to be true, the right sought to be asserted by the plaintiff did not exist. The equitable matters involved in the issues raised on the answer and order of reference amount to a cause of action in favor of defendants, which if established, extinguished or superseded the plaintiff’s cause of 'action. This brings the case directly within the principle settled in Buckner v. Mears, 26 Ohio St. 514; Taylor v. Leith, 26 Ohio St. 427, where it was held the case was appealable from a final judgment thereon.

Judgment of the district covert reversed and cause remanded